IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
03 AUG -6 AM 11:06
U.S. DISTRICT
N.D. OF ALABAMA

| | |
|---|---|
| ERNEST WRIGHT, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CASE NO. CV01-HGD-1808-S |
| ) | |
| BUFFALO ROCK COMPANY, ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the motion for summary judgment filed by defendant, Buffalo Rock Company (Buffalo Rock) [Doc. #7]. This matter is before the undersigned United States Magistrate Judge based on the consent of the parties pursuant to Rule 73, Fed.R.Civ.P.

### FACTUAL BACKGROUND

Plaintiff, Ernest E. Wright, is an African-American who was a route salesman for Buffalo Rock prior to his termination. [Plaintiff's Exh. 1 at ¶ 2]. He asserts that he was subjected to retaliation for having successfully pursed a charge of race discrimination against Buffalo Rock. According to Wright, after the original discrimination matter was settled in April 2000, he was selected for random drug screening many more times than other Buffalo Rock employees until he allegedly tested positive and was terminated on October 26, 2000. [*Id.*

at ¶¶ 3-4]. Wright claims that the drug testing and termination were pretexts for retaliation against him for the earlier charge of discrimination. [Doc. #1, Complaint; Plaintiff's Exh. 1 at ¶ 4]. According to plaintiff, his foot began to hurt in October 2000, while he was running his route. [Plaintiff's Exh. 1 at ¶ 4]. After reporting the injury to his supervisor, plaintiff was sent, on October 20, 2000, to a doctor to have his foot examined. According to plaintiff, the doctor stayed on the phone with Buffalo Rock supervisor Gary Walls almost the entire time plaintiff was at the doctor's office. After the examination, the doctor sent plaintiff to get a drug screen. [*Id.* at ¶ 5].

Plaintiff states that, at the time of the drug screen, he had not taken any illegal drugs. [*Id.* at ¶ 6]. He was, however, taking a number of different prescription medicines including Ultram, which he asserts is an opiate-based substance that should have, but did not, show up on the drug screen.[1] [*Id.*].

On October 26, 2000, Gary Foster, Director of Operations, informed plaintiff that he was being terminated for testing positive for drugs (cocaine). Plaintiff alleges that, prior to this, fellow employee Chris Lacey told him that plaintiff's direct supervisor, Sonny Seals, had stated that Buffalo Rock was going to get even with plaintiff for filing his original discrimination suit. According to Wright, Seals and Gary Walls both had been involved in the

---

[1] According to the manufacturer of this drug, Ultram is a drug whose generic name is tramadol hydrochloride. It is described as a "centrally acting synthetic opioid analgesic." Ultram Prescribing Information, Ortho-McNeill Pharmaceutical Co. (August 2001).

2

allegations contained in plaintiff's original discrimination lawsuit. [*Id.* at ¶ 9]. Wright underwent another drug test on October 26, 2000. The results were negative. [*Id.* at ¶ 10 and Exhibit A].

Plaintiff claims that Buffalo Rock has a policy which requires individuals who fail drug screens or receive convictions for driving under the influence to be terminated. [*Id.* at ¶ 11]. According to Wright, two Caucasian employees, Matthew Green and Mike Fanning, received DUIs but were not terminated. Green was given vacation time and a driver until he cleared up his suspended license, and Fanning was transferred to the warehouse. [*Id.*].

In his charge of discrimination filed with the Equal Employment Opportunity Commission (EEOC), Wright stated as follows:

> I. I was hired by the employer named above during September, 1994. On October 26, 2000, I was discharged from my position of route salesman.
>
> II. I was informed by Gary Foster, Operations Manager that I was being discharged because I failed a drug test.
>
> III. I believe that I was discriminated against in violation of Title VII of the 1964 Civil Rights Act, as amended in retaliation to a previously filed charge of discrimination (Charge No. 130980564). The employer and I reached an out of court settlement in April, 2000. I deny that I had used any illegal drug. Employees who have not filed charges of employment discrimination have been treated more favorably

> than myself under the same or similar circumstances.

[Plaintiff's Exh. 2, EEOC Charge of Ernest Wright].

### DISCUSSION

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). It is, therefore, under this standard that the court must determine whether the plaintiff can meet his burden of coming forward with sufficient evidence as to each material element of his claim sufficient to permit a reasonable jury to find in his favor.

Defendant asserts that plaintiff's complaint contains allegations not found in his EEOC charge. According to defendant, plaintiff alleges in his complaint

5

that he was "frequently drug tested until he allegedly tested positive and was terminated." [Defendant's Exh. A, Complaint, at ¶ 6]. The EEOC charge does not mention this allegation. [Defendant's Exh. B, EEOC Charge of Discrimination].

The scope of a judicial complaint under Title VII is limited to the acts of discrimination contained in the EEOC charge or claims "like or related" to the claims raised in the charge. *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987). In *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970), the Fifth Circuit Court of Appeals stated, in addressing the degree to which the discrimination alleged in a Title VII complaint may vary from that described in the EEOC charge, that "the allegations in a judicial *complaint* . . . 'may encompass any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.'" *Id.*, *quoting King v. Georgia Power Co.*, 295 F.Supp. 943, 947 (N.D.Ga. 1968) (emphasis added); *see also Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 928-29 (11th Cir. 1983). The court further stated that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez*, 431 F.2d at 466. Thus, because the claim in plaintiff's complaint that he was repeatedly drug tested more often than

6

other employees is not one that was listed in the EEOC charge, it is subject to dismissal.

In addition, plaintiff never produced any evidence, other than his own opinion, to support his claim that he was tested more often than other employees. When asked how often he was tested, plaintiff's response was, "At this time, I am not sure how many times I was tested." [Doc. #8, Submissions in Support of Motion for Summary Judgment, Exh. E, Plaintiff's Answers to Interrogatories, at 5, ¶ 15]. The evidence submitted by defendant reflects that after the April 2000 settlement of his discrimination lawsuit, plaintiff was tested on only one occasion other than that which resulted in his termination. He tested negative. [Doc. #19, Exh. A, Aff. of Kenny Smith]. There is also no evidence regarding how many times other employees were drug tested. Thus, even if this claim were not due to be dismissed for failure to list it in the EEOC charge, it still fails for lack of evidence. Plaintiff may not rely on his own unsubstantiated, bald assertions to create a genuine issue of fact. *See Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1474 (11th Cir. 1991); *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1327 (11th Cir. 1998).

Wright can establish a case of retaliation by providing direct evidence of defendant's intent to retaliate or by making out an unrefuted *prima facie* case

of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct.1817, 36 L.Ed.2d 668 (1973).

Plaintiff asserts that there is direct evidence of discrimination evidenced by the alleged statement of Felston "Sonny" Seals (plaintiff's direct supervisor) to another employee, Chris Lacey, that Buffalo Rock was going to get even with plaintiff for his original discrimination suit. However, this alleged statement does not qualify as direct evidence. Seals denies making this statement. [*Id.*, Aff. of Felston Seals]. There is no affidavit or testimony from Lacey that this incident occurred. Thus, the only evidence is Wright's testimony that Lacey told him that Seals had told Lacey that Buffalo Rock was going to get even with plaintiff. This comment is inadmissible double hearsay and cannot be considered as probative evidence. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 n.1 (11th Cir. 1999); *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 561 (11th Cir. 1998); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455-57 (11th Cir. 1997).

To establish a *prima facie* case of retaliation pursuant to *McDonnell Douglas, supra*, under 42 U. S. C. § 2000e-3(a), a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998).

Wright's complaint to the EEOC is unquestionably statutorily protected expression. Thus, the first element is satisfied. Likewise, Wright was terminated and, thus, suffered an adverse employment action. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 760-61, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998) (a tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits).

Therefore, the remaining issue is whether there is enough evidence to create a genuine issue of material fact as to the causal connection between Wright's participation in a protected activity and the adverse employment action. "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (citation and internal quotation marks omitted).

Defendant was aware that plaintiff previously had filed a civil rights action against it. It is uncontested that Buffalo Rock reached a settlement with plaintiff in that dispute. Plaintiff's claim that the protected activity and the adverse action were not wholly unrelated is based on two alleged facts. Plaintiff alleges that the comment made by Sonny Seals, that Buffalo Rock was going

9

to get even with plaintiff for filing his original suit, is evidence of a causal connection. However, as previously discussed, this evidence is inadmissible double hearsay.

However, plaintiff also alleges that he can establish a causal connection by the fact that he was terminated approximately five to six months after he settled his claim against Buffalo Rock. Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated. *See, e.g., Gupta*, 212 F.3d at 590; *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999). Thus, plaintiff has established a *prima facie* case of retaliation under *McDonnell Douglas, supra.*

Once a *prima facie* case has been established, an employer may rebut a presumption of discrimination by clearly articulating in a reasonably specific manner a legitimate non-discriminatory reason for terminating the plaintiff. *See Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir. 1985). This intermediate burden is "exceedingly light." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994). "The defendant need not persuade the court that it was actually motivated by the proffered reasons . . . . It is sufficient if the defendant raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207

(1981). See *Chaney v. Southern Railway Co.*, 847 F.2d 718, 722 (11th Cir. 1988); *Griffin v. Carlin*, 755 F.2d 1516, 1526 (11th Cir. 1985). In other words, "an employer shall not be liable if it can prove that, even if it had not taken [the protected activity] into account, it would have come to the same decision regarding a particular person." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 242, 109 S.Ct. 1775, 1786, 104 L.Ed.2d 268 (1989).

Once an employer has provided a legitimate, non-discriminatory reason for its actions, if the plaintiff is to prevail, he then must establish by a preponderance of the evidence that the employer's articulated reason was a pretext for discrimination. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Chaney*, 847 F.2d at 722; *Conner*, 761 F.2d at 1499.

Defendant's proferred legitimate, nondiscriminatory reason for terminating plaintiff was that he violated a company rule which states that "[c]onviction of driving under the influence of drugs or alcoholic beverages while on duty will result in the automatic termination of employment." [Attachment to Aff. of Kenny Smith, Buffalo Rock Human Resources Coordinator, Buffalo Rock Company Rules, at Rule III B]. Defendant has met its "exceedingly light" burden of providing a legitimate, non-discriminatory reason for terminating Wright.

11

Plaintiff asserts that the evidence presented reflects that this reason is pretextual. According to plaintiff, pretext is shown by his assertion that he was treated in a different manner than similarly situated employees who did not engage in a protected activity. *See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. To prevail on this ground, plaintiff must show that the comparative employees are "in involved in or accused of the same or similar conduct" and yet are disciplined in a different, more favorable manner. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). The conduct must be of comparable seriousness. *Id.* at 1563.

Plaintiff alleges that Buffalo Rock employees Matthew Green and Mike Fanning are two comparators who had not engaged in protected activity and who violated work rules comparable to plaintiff but who were not terminated. However, there are several factors that distinguish their situations from plaintiff's.

Mike Fanning was not accused of using cocaine while on duty. He was arrested for driving under the influence of alcohol in December 1990. The incident occurred on a weekend while he was off duty. Fanning reported this offense to Buffalo Rock as required by company rules. His driver's licence was suspended as a result of the DUI conviction, and he was transferred to the shipping department where he still works. [Doc. #19, Exh. A, Aff. of Kenny Smith; Exh. C, Aff. of Mike Fanning].

Matthew Green was arrested for driving under the influence of alcohol in December 1997. This incident occurred on a weekend while he was off duty. He was sitting in a parked car when arrested. Green also did not test positive for cocaine, nor was he on duty at the time of the offense. Green also reported this offense to Buffalo Rock as required by company rules. The charges ultimately were dropped, and his license was reinstated. [*Id.* at Exh. D, Aff. of Matthew Green].

Buffalo Rock's policy states that conviction of driving under the influence of drugs or alcoholic beverages **while on duty** will result in the automatic termination of employment. Neither Fanning nor Green was on duty at the time of their respective arrests. Buffalo Rock policy requires that an employee report any convictions for DUI and any traffic citations received. Both Fanning and Green complied with company policy.

A review of the record evidence reflects that in 1999 and 2000, only one person tested positive for drugs in a random drug screen. That person, Ralph Ashley, was terminated. Only one person besides Wright was charged with using drugs while on duty. That person, Lowell Heard, also was terminated.

It is undisputed that Wright was on duty and that the drug test came about as a result of another Buffalo Rock policy that requires drug and alcohol testing any time an employee is injured on the job. [*Id.* at Exh. A, Aff. of Kenny Smith, Exh. 3, "On the Job Injuries"]. Furthermore, the DUI charge

13

against Green was dismissed. Thus, Green's situation is not comparable to plaintiff's for this reason as well. In addition, Wright tested positive for cocaine. Matthews and Fanning were accused of alcohol-related offenses. Alcohol is legal to possess and consume but may subject one to arrest if one has had an excessive amount. Cocaine is illegal to possess or use. Its simple possession is a criminal offense.

Another factor which indicates that defendant's stated reason for termination of plaintiff is not pretextual is the fact that all drug tests not related to on-the-job injuries are performed on a random basis. Selection for a random drug test is done by Carraway Industrial Medical, the company selected by defendant both to select and test Buffalo Rock employees. [*Id.* at Exh. A, Aff. of Kenny Smith]. Buffalo Rock has nothing to do with the selection of employees to be tested; it is all done by Carraway Industrial Medical. [*Id.*]. Therefore, even if Wright had been tested more times than other employees after April 2000, Buffalo Rock had nothing to do with it.

The drug test performed on plaintiff after his accident took place on October 20, 2000. The fact that he tested negative for cocaine on October 26, 2000, is irrelevant. There is no expert testimony with regard to how long cocaine will remain in a person's system. Thus, there is no evidence that cocaine detected in plaintiff's blood on October 20, 2000, still would be detectable on October 26, 2000. Likewise, there is no evidence regarding how

14

recently before the October 20 drug test that Wright had taken Ultram or any of his other prescription medication, and there is no evidence as to how long any of it is detectable by the drug test used in this case.

In addition, the fact that the physician who examined plaintiff on the day of the accident and oversaw the drawing of his blood for testing, was speaking on the phone with Gary Walls before plaintiff underwent the drug screen proves nothing. There is no evidence that the testing agency, Carraway Industrial Medical, colluded in any way with defendant. Because Carraway Industrial Medical is an independent third party, any inconsistencies in the drug testing were anomalies that cannot be imputed to defendant. In any event, there is no evidence that these "inconsistencies" had any effect on the outcome of plaintiff's drug test.

Even assuming that the drug test reflected an incorrect result, plaintiff has not shown pretext. He simply has shown that defendant made a decision to terminate him based on faulty information supplied by a third party. An employer may make a decision regarding an employee "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984).

Based upon the foregoing, the court concludes that defendant's motion for summary judgment is due to be granted. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 6th day of August, 2003.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE